May it please the court. My name is Daniel Johnson and I'm here for the appellant plaintiffs Nathaniel Olson and Christopher Hesse. The main issue on this appeal is the interpretation and enforcement of a class action settlement judgment in a Kansas state court. And it arises from the intersection of several legal issues that reflect, I think, the same practical problem in the context of settling class actions. How much can a class representative and his counsel give away the rights of absent class members in order to settle a case? Help me with a problem I have here. It looks as though the class was defined broadly enough to include customers in Washington of Sprint. And it looks as though the release is drawn very broadly. I'd like you to address particularly paragraph 46 of the release. We have it here, S.E.R. 508. And the definition of the class and show how you can avoid having that settlement and release all the claims of the Washington customers in this case. I guess the first answer I would give is yes. The class was certainly defined to include those in Washington who had been charged certain federal regulatory fees by Sprint. I thought it was broader than that. I don't think the definition of the class was broader. I think your question may be concerning the release paragraph on S.E.R. 508 is another question. I'll address that one now. There's no doubt that Mr. Hesse and Mr. Olson and the class they already represent, or at least some portion of it, was in the class in the Benny settlement. The problem is that Mr. Benny was not in the class and had no ability to make any claims that this class in Washington is making. And that's really where the concern arises because, as you say, the release appears to be written so broadly as to include such claims that Mr. Benny didn't even have. And I guess the first simple answer I would say is no. Benny could not have asserted Hesse's claim. Absolutely not. And that runs afoul of two structural protections. That's because it's a Washington charge that Benny never paid. Right. And it was imposed by Sprint on Washington consumers in order to recoup a cost that it paid to Washington State, whereas all of Mr. Benny's claims were asserted about fees that were imposed by Sprint in order to recoup federal costs or payments it had to make. Now, what do you do about the breadth of paragraph 46? Yeah, so there's two responses. As in our brief, we argue first that the language the court should focus on is in the settlement judgment because it's not quite so broad in the judgment, and this is a race judicata issue, so we want to look at the judgment. I don't understand. The judgment is not worded the same as the settlement agreement itself. But why wouldn't the release control? Because it's a race judicata issue, and we have to look at the judgment that the court actually entered. But I thought the judgment approved the release. You know, that's an arguable point. I mean, there is language at the very end of the release paragraph in the judgment that says, as provided in the settlement. But it's not clear that the court was actually embracing the breadth of the release in the settlement because the release as defined quite extensively in the judgment is not worded the same way. It's worded more narrowly. But I would like Judge Kleinfeld to move on to the bigger issue, which, I mean, even accepting that this release paragraph applies, it runs afoul, to the extent that it should be interpreted the way that Sprint argues it should, it runs afoul of two structural protections for class members, absent class members. One is adequate representation, and I've just mentioned that Mr. Benny didn't have this claim. You can't represent a class on a claim you don't have, arguing, you know, settling, releasing issues that you've never experienced personally. And two is the identical factual predicate doctrine, and that's essentially the same four corners as the adequate representation. Again, there has to be facts that are identical in both underlying both sets of claims. We know that defendants want as broad a release as possible, and that's fine. But these structural protections govern whether and to what extent an overbroad release can be enforced. And it cannot under either of those two doctrines for those two reasons. The facts are completely different in this case. Sprint imposed different charges here for different reasons in order to recoup different costs and pay a different governmental entity. And Mr. Benny didn't experience any of that. This is, you know, we looked at, we cited quite a bit the Walmart-Raines-Postabella case. The Raines case was here in this circuit. The Walmart case was in the Second Circuit. What you had there was basically a multi-district litigation case, and there were different sets of plaintiffs making different types of claims, but they were all based on the same facts. That was the sale of MCA to a buyer and whether or not the shareholder's rights were adequately protected. So they were the same, they were different legal theories, but they were based on the same facts. And that is why... Back up for just a second. If we were to apply your interpretation, let me make sure I'm looking at the right document here, then what we would do if we didn't want to say that the judgment just can't do this because it fails the adequate representation and same factual predicate requirements. If we didn't want to go that far, we would look at the language subject matter of the claims alleged in the Benny action? Yeah. I mean, the definition of regulatory fees is at ER 114 to 15, and it's very clear that it embraces these federal charges that I've described that are completely factually different in terms of a consumer or in terms of Sprint, frankly, than what we're complaining about in this case, that Mr. Hesse and Olson are complaining about. This is a case like the National Super Spuds case, which was a case in the Second Circuit where this settlement was not approved because of this problem. And there, like here, you have a subset of the class that has other claims for which they're not getting any remedy in the settlement and couldn't structurally. In that case, you had a settlement that was not approved, and that might be the basis to object to a settlement. Here we have a settlement that was approved. You're right. So we're looking at it collaterally here, and that's right. That's one difference. And there are some cases in the briefing where collateral attacks are approved of, the Hansberry v. Lee case in the Supreme Court, the Stevenson v. Dow case, Eleventh Circuit maybe. And this court in Williams v. Boeing pointed this out. It said, look, Boeing can draft the release that it got out of this consent decree as broadly as it wants, but whether it can be enforced is another question. And I think the premise there is that sometimes, as here, only the collateral court is ever going to be asked to look at it. I mean, the judge in Kansas never had any opportunity to look at it. Sprint never called it to his attention that this case existed, which it did, and they never called it to our attention, which is usually what is done. And that is because I don't think Sprint had any idea that the claims in this case would be barred by that settlement until some lawyer sometime at some point thought it up, and it worked. Because we asked them the very same month as the settlement agreement became final in Kansas, we asked them and they answered a discovery request, can we have documents pertaining to any other cases involving any other surcharges? And they said that would be irrelevant. They never told us about this settlement. They thought it up after the class had been certified, the case had already been through multiple merits briefings. So I'll reserve the rest of my time. Thank you very much. Thank you, Counsel. Counsel. Good morning, Your Honors. My name is Andrew Glass and I represent the Defendant Appellee Sprint Spectrum LP. Your Honors, the issue before the Court this morning is straightforward. The District Court correctly found that the plaintiffs in this action were barred from pursuing their claims by a previous class release that they agreed to. And Sprint asked that that judgment be upheld in its entirety. The plaintiffs' claims in this action are barred by the Benny settlement release because those claims share the order expressly incorporates the language of the release. And if you look at... So we do use the release. Now, tell me, what do we do about SER 554? It says subject matter of any of the claims alleged in the Benny action. Why isn't that limiting language for the release? It's not limiting language because other parts of the release go on to describe that the absent class members are going to release any surcharges in any other action or court based on disclosure or collection claims for surcharges, regulatory fees, or excise taxes. And so clearly the parties have bargained for a very broadly worded release. And when you look... The parties, I don't mean the parties here, I mean the parties in Kansas, is that correct? The members of the class in the Benny case included Mr. Hess and Mr. Olson. I take it Mr. Hess and Mr. Olson didn't show up at the negotiating table. No, but it... The parties who did represent the class that covered them, were they cognizant of the Washington State claim? They were cognizant of the, because it was a nationwide class, they were cognizant that there were variances in different jurisdictions all across the country between what different members of the settlement class in Benny were going to release when they gave that broadly worded release. And did the negotiations include a payment of money or of the benefits through the release that would include all those other claims? It would. And what... They negotiated regarding the other claims? Yes, they... Were the other claims identified in the discussions? The other claims are identified in the discussions because they include the terms surcharges, regulatory fees, and excise taxes that are in addition to the specific claims that were the subject of the Benny complaint itself. Is there anything in the record that reflects that in fact the Washington State claim was identified in the subject of discussion in the Benny case? The Washington claim isn't specifically identified, but the fair reading of the settlement agreement and the release encompasses that claim because it includes a broader scope, more broadly defined set of surcharges than just the fees that were named in the complaint. And it is a fair inference and the only inference that can be drawn that class council, which I will note the plaintiff's class council included Edward Robertson, the former Chief Justice of the Missouri Supreme Court, in negotiating that broadly worded release. The court also found that there was no conflict between the class representative and the absent class members who were nationwide. You have a standard broad release, any and all claims known or unknown. When an individual settles a case, say for personal injury in a car accident, and signs that release, his lawyer can inform him. You know, if you discover you've got an additional physical problem tomorrow, tough, you're releasing it. Here, the class is focused on the Kansas claims. There's no reason to think that any of them had any thought of potential Washington claims. And you don't have an individual with Washington or potential Washington claims knowingly giving them up. So I wonder if we shouldn't put some force into that doctrine that limits class action releases to, how did your adversary put it, adequate representation in the same factual bracket. Your Honor, it was, first of all, not a Kansas class. It was a nationwide class. It was a nationwide class of people who had been subject to the sort of charges that that Kansas class was complaining about. The Kansas, the member of the class who happened to be from Kansas and brought suit in the Kansas state court received the same types of charges. He was from Missouri. He originally filed suit in Missouri. But he was from Missouri. You're correct, Your Honor. He was a Missouri resident. I stand corrected. And neither case would he have been subject to the Washington state tax. He would not be. But the point here is. Would he be an adequate class representative for this claim? No, that's not correct because the. I was a question. Oh, I'm sorry. Yes, he could be because there are two points. One is what courts look to define whether there is adequate class representation is can the absent class members adequately value the claims that they're being asked to give up versus the compensation that they're getting from the settling defendant. And that was the case here. Mr. Hess and Mr. Olson received actual notice. They received the notice from the court. That's undisputed. The notice talks about any surcharges and fees having to do with disclosure or collection, which is the exact nature of the claim they brought here. And they were represented by counsel at the time. I understood Judge Clifton's question. At least the way it struck me as being a little different. Suppose Benny and his class action lawyer, an effective team knowledgeable about Sprint, had traveled to Seattle and filed in the Western District of Washington a class action on behalf of all the people who paid this Washington surcharge. Could he have satisfied the representativeness requirement? I think the way of looking at it, because courts routinely recognize that a class claimant can release claims that are broader than those that are named in the complaint and that he himself may not have actually been able to. You're evading my question and you evaded Judge Clifton's question. And I don't mean to, Your Honor. Why don't you answer it then? The Benny plaintiff was not charged the B&O tax. But what I'm trying to emphasize is the way of looking at it is. So could he have filed a class action on behalf of those who were? He could not have directly filed a class action on behalf of Washington State customers for that specific charge. But what he could have done is bargained for adequate compensation for them, which he did. And moreover, there would have been. That's really the source of my earlier question. Because I haven't seen anything in the record that suggests, in fact, that the settlement approved by the Kansas court was a settlement negotiated on the premise that it covered the monetary value of claims such as the one presented in the current case. Well, and the indicia that we have that that, in fact, happened is that the parties agreed to a very broad term. The problem with that is that in class action settlements at that point in time, all the motivation is one sided. The plaintiff's representative and the plaintiff's attorneys want to make their deal. This is like so many other deals where most of the money actually gets carried away by the plaintiff's attorneys. And it's not adverse to their personal interest to let the defendant craft language as broad as all outdoors. But is there any real sense that the Washington state claim or comparable claims that might exist in any other state, state by state claims, are swept up and seriously valued in the negotiation that leads to the settlement? They are, Your Honor. And what is there in the record that gives me some confidence that this was honestly settled? Because the court looked at that, the risks of a trial going forward versus the compensation that was being offered to the absent class members and found, even when considering the broad scope and the fair inference of the broad scope of the term surcharges, is that it's including other items. Let me try once again before your time is entirely gone. Is there anything in the record that you can point me to that gives me confidence to believe that the process in Kansas fairly incorporated the monetary value, if any, of claims such as this one? Yes. And my answer, Your Honor, is that what courts have done, unlike in the- There's a record reference in there someplace. If you tell me there's the theory that courts look carefully and you're allowed to craft a settlement agreement as broad as outdoors, I don't find that a very satisfying answer. That doesn't tell me anything that gives me confidence that the Kansas process fairly encompassed this claim. What I can point you to, Your Honor, is the record reference at SCR 553 and 554, which we've discussed before. It's the paragraph that describes the broad scope of release and allows the absent class members- That's the broadest outdoors language. Now, is there anything that suggests that the court itself fairly examined the question of whether there are other and aren't part of the claims that the class representative can fairly bring? The court in its order recognized that the scope of the claims that were being released were broader than the claims that were specifically named in the Benny complaint. And that is because the court specifically discussed in its order that it was more than just the regulatory fees named in the Benny complaint, but looked to this term, which I have to come back to, that the absent class members were being asked to release surcharges, regulatory fees, and excise taxes. So clearly, the court was aware of the breadth and the plaintiff's counsel was aware of the breadth of the release that the absent class members were being asked to give. Mr. Hess and Mr. Olson could have opted out. They could have joined their claims to the Kansas court action. They chose to do neither of those things. The settlement comported with due process in every other respect, and we ask that the court uphold the district court's judgment below. Thank you very much, Your Honor. Thank you, counsel. Counsel. I just have one very small point to make if there are no questions, further questions for the appellants from the panel. And that is just to emphasize what Judge Clifton was saying about the incentives at the point of settlement. I think what Your Honor was saying is especially true with the language of the release because as you, I'm sure, can surmise if you haven't actually seen it, in a class action settlement like most settlements, the relief is what's negotiated. The release is presumed until the last minute when the defendant draws it up and gives it to plaintiff's counsel. And plaintiff's counsel already has a fee agreement in place, a benefit for the class in place. That's why we need these structural protections of the identical factual predicate and adequate representation. Let me ask you about the particular record reference that we just heard because SER 553-54 is not amongst the stuff I carried up here with me. What's your take on why that does or does not reflect the inclusion of the claim that you're seeking to bring in this settlement, in the Kansas settlement? Well, I think the only answer I can give you is, you know, like you said, if you read it, you know, literally, yeah, it's broad as the great outdoors and, you know, I think that there are a bunch of sort of, there are a lot of ways in which we can argue that it shouldn't be interpreted as broadly as it looks. But it looks very broad. There's no doubt about it. It looks very broad and I think the first one is, well, the judgment didn't actually articulate it this way. And two is, there was absolutely no evidence that anybody was even aware of or even thought of this case at the time. And nobody involved that actually had any B&O tax surcharge imposed upon them in any state. And that, you know, not even Sprint thought that it was related according to their discovery response to us, I think ER 69. But, yeah, I can't say much more than that. It's a very broadly written release. Thank you very much. Thank you, counsel. HESO versus Sprint is submitted.
judges: Alarcon, Kleinfeld, Clifton